UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RANDY OUTLEY (#125022)

VERSUS                                          CIVIL ACTION

BURL CAIN, ET AL                                NUMBER 14-219-SDD-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.
    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, November 10, 2014.

                                          STEPHEN C. RIEDLINGER
                                          UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RANDY OUTLEY (#125022)

VERSUS                                          CIVIL ACTION

BURL CAIN, ET AL                                NUMBER 14-219-SDD-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the defendant's Motion to Dismiss. Record document number 11. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain. Plaintiff alleged that he was subjected to unconstitutional conditions of confinement and denied equal protection in violation of his constitutional rights. Specifically, the plaintiff alleged that he was assigned to a top bunk bed located in Camp D, Raven unit, and that the bunk bed is not equipped with a ladder. Plaintiff alleged that to access his bed he must either leverage himself using the cell bars or climb on the toilet/sink facilities to get into his bed. Plaintiff alleged that on April 16, 2012, he slipped and fell while climbing down on the toilet/sink to get out of his bed. Plaintiff alleged that he injured his back when he fell. Plaintiff alleged that in other

---

[1] Record document number 21.

housing units within the prison the bunk beds are equipped with ladders.

For the reasons which follow, the defendant's motion should be granted.

## II. Applicable Law and Analysis

### A. Motion to Dismiss Standard

Defendant moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows

that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (citations omitted). But even a pro se complainant must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id.* at 1949-50 (internal quotation marks omitted).

**B. Eleventh Amendment Immunity**

Plaintiff brought this action against the defendant in both his individual and official capacities.

Defendant argued that he is entitled to Eleventh Amendment immunity insofar as the plaintiff sued him in his official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official

in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a § 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14. Thus, the plaintiff may recover money damages against the defendant insofar

4

as he was sued in his individual capacity for actions taken by him under color of state law which caused the deprivation of constitutional rights. However, because the plaintiff did not seek prospective injunctive relief his claims against the defendant in his official capacity is not actionable under § 1983.

### C. Qualified Immunity

Defendant argued that he is entitled to qualified immunity because his conduct did not violate any of the plaintiff's clearly established federal constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established federal statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were

consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's federal statutory or constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

**1. Supervisory Liability**

Warden Cain argued that the plaintiff named him as a defendant but failed to allege facts against him which rise to the level of a constitutional violation.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between

the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff did not allege any facts regarding a constitutionally deficient policy nor that Warden Cain was personally involved in the April 16, 2012 accident.

### 2. Equal Protection

To prove a cause of action under § 1983 based on a violation of equal protection, the plaintiff must demonstrate that the official acted with a discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577 (5th Cir.), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800 (1996). Discriminatory purpose in an equal protection context

implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Id.* A violation of the equal protection clause occurs only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

Plaintiff did not allege any facts which could support a claim that the failure to equip the bunk beds in Camp D, Raven unit, with ladders was because of his age, race, religion, sex, or national origin.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendant's Motion to Dismiss be granted and this action be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), and without leave to amend because there is no conceivable, non-frivolous federal claim he could assert against the defendant consistent with the facts alleged in his complaint.

Baton Rouge, Louisiana, November 10, 2014.

/s/ Stephen C. Riedlinger
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE